**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**PEDRO ALVARADO,**

      **Plaintiff,**

**vs.**                         **Case No. 4:09cv316-MP/WCS**

**DR. C. MANOCHA, et al.,**

      **Defendants.**

_____/


## REPORT AND RECOMMENDATION

Defendants filed a motion for summary judgment on May 13, 2010, doc. 41, in response to Plaintiff's amended civil rights complaint, doc. 12. The parties were provided a discovery period, and Plaintiff was advised of his obligation to respond in opposition to the summary judgment motion. Doc. 42. Plaintiff has had sufficient time to do so, advised that his initial response, doc. 59, had problems, and directed to file "an amended response which must be complete in and of itself." *See* doc. 64. Plaintiff has filed an amended response, doc. 67,[1] and a declaration, doc. 68, which is not relevant to the summary judgment motion.

_____

[1] Plaintiff's certificate of service states that he has provided a copy of the document to the "Defendants by mail" but then provides an address showing it was mailed to the Clerk of this Court. Doc. 67, p. 9. I will assume that Defendant received the document and that, by this notice, they are able to review the document electronically if it was not properly received in the mail. This issue need not delay consideration of the pending summary judgment motion.

**Facts of case and claims raised**

Plaintiff alleged in his amended complaint, doc. 12, that his Eight Amendment rights have been violated because he was not provided sufficient dental. Plaintiff contends that he was seen by Defendant Manocha to be fitted for dentures on September 10, 2008. Doc. 12, p. 5. Plaintiff claims that Defendant unnecessarily caused him extreme pain during that dental visit. *Id.*

When Plaintiff returned on December 1, 2008 to pick up his dentures, he advised Defendant that the dentures caused him pain, discomfort, and scraped and stretched his lips. *Id.*, at 6. Defendant told Plaintiff that some adjustments were customary, and should not worry. *Id.* Plaintiff alleges that after three days, his gums were bleeding from the dentures and the dentures did not fit right. *Id.* Plaintiff states that he had to eat only soup because he could not "manage to eat regular food with the dentures." *Id.*

Plaintiff had a follow-up appointment on December 18, 2008, after he filed a grievance, and Defendant Manocha took the dentures and began a sanding process. *Id.* Plaintiff alleged that he was given the dentures back, still with grit from the sanding machine on them, and was sent away. *Id.* Plaintiff reports that the sanding made the dentures "even more uneven and rough." *Id.* Plaintiff said that continued use of them scrapes his gums and has resulted "in a permanent [s]tripe and blisters in the front of [his] lower gums." *Id.*

Plaintiff alleged that he had written grievances and requests, but states he had not received responses or further treatment. *Id.*, at 6. He contends his efforts to receive proper health services have failed. *Id.* Plaintiff states that he is "in great pain and his gums are sore and blistered and he cannot eat properly." *Id.*, at 7.

Plaintiff sets forth seven claims. Doc. 12, p. 8. The first Eighth Amendment claim is against Defendant Manocha for pain during the process of preparing the dentures; the second is against Manocha for failing to provide adequate follow-up exams and treatment for the dentures; and the third claim against Manocha is for the "denials and delays in providing appropriate dentures." *Id.* The fourth claim is against Defendants McNeil and Lumpkin for failing to "correct inadequate procedures that restrict needed dental-medical treatment." *Id.* The fifth claim is against Defendants Carrero, Lumpkin, and Shields for failing to investigate Plaintiff's claims about Defendant Manocha's care. *Id.* The sixth claim is against Defendants McNeil and Lumpkin for "maintaining procedures and policies causing delays and denials to providing functional dentures . . . ." *Id.* The seventh and final claim is against Defendants Carrero, Lumpkin, and McNeil for failing to act after knowing of "the unconstitutional procedures and denials at Jefferson C.I." *Id.*

**Motion for summary judgment, doc. 41**

The five Defendants filed a motion for summary judgment asserting that Plaintiff did not exhaust his administrative remedies as to claims concerning the dental visits on September 10, 2008, and December 18, 2008. Defendants contend that only one grievance ended in an administrative appeal, and that complaint concerned not being seen by Defendant Manocha on April 15, 2009. *Id.*, at 1. Defendants contend that with the possible exception of the grievance concerning sick call on April 15, 2009, Plaintiff did not submit grievances about be denied access to dental sick call. *Id.*

Further, Defendants contend that Plaintiff fails to state an Eighth Amendment claim of deliberate indifference, that *respondeat superior* is not a basis for § 1983

liability, and that the Defendants are entitled to qualified immunity and Eleventh Amendment immunity. *Id.*, at 2. Defendants contend Plaintiff is not entitled to compensatory or punitive damages because Plaintiff fails to establish physical injury, and injunctive relief "must be viewed in conjunction with the requirements of the Prison Litigation Reform Act . . ." *Id.*

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts. Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769,

167 L.Ed.2d 686 (2007), *cited in* <u>Ricci v. DeStefano</u>, 129 S.Ct. 2658, 2677 (2009).

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." <u>Matsushita Elec. Industrial Co.,</u> 475 U.S. at 587 (internal quotation marks omitted), *quoted in* <u>Ricci v. DeStefano</u>, 129 S.Ct. at 2677.

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  <u>Owen v. Wille</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553.  Despite being advised of the need to come forward with evidence to support his claims, that Plaintiff should not rely on mere allegations or denials, and that he must include a separate statement of facts as to which he contends there *is* a genuine of fact, doc. 42, Plaintiff has provided only a memorandum in response to the summary judgment motion.  Defendants' evidence is, therefore, unrebutted and their facts, undisputed.

**The undisputed Rule 56(e) evidence**

Plaintiff *argues* that "Defendants have failed to show the lack of a genuine issue of material fact involving their duty to provide Plaintiff adequate dental health care." *Id.*, at 5.  But Plaintiff did not provide any evidence to support his response to summary

judgment, nor did Plaintiff present a statement of material facts as to which Plaintiff

contends there is a genuine issue which must be resolved at trial.  For example, Plaintiff

states that Defendants were:

> . . . acting with deliberate indifference to Plaintiff's need for treatment,
> despite efforts made by Plaintiff to obtain treatment by his visits to sick call
> for dental treatment, by his visits to dental where he was not adequately
> treated because the defendants acted with deliberate indifference by
> failing to take reasonable measures to abate Plaintiff's need for dental
> treatment. . . .

Doc. 67, p. 5.  Those are legal conclusions, not facts.  Accordingly, the evidence

submitted by Defendants, which will be set forth ahead, is not in dispute.

Plaintiff entered the custody of the Department of Corrections on October 23,

2007, at the South Florida Reception Center.  Doc. 41, Ex. 1 (doc. 41-1).  Plaintiff had

an initial dental visual examination on the following day, October 24th, and the exam

record notes that all 32 of Plaintiff's teeth were missing and he "had no prostheses."

Doc. 41, p. 2; Ex. 2 (doc. 41-2).[2]  Gingival conditions were noted as "normal" and

masticating efficiency was "poor."  *Id.*  After several temporary housing locations,

Plaintiff was transferred to the Jefferson Correctional Institution on July 29, 2008.  Doc.

41, Ex. 1.  Plaintiff sent an Inmate Request to the Dental Department at Jefferson C.I.

on August 17, 2008, stating that because he did not have dentures, it was difficult for

him to eat his food and he wanted dental help.  Doc. 41, Ex. 3.  Defendant Dr.

---

[2] All exhibits are filed by Defendants and attached to the motion, doc. 41.  The
exhibit number correlates to the hyphenated number on the electronic docket such as
exhibit 2 is doc. 41-2, and the like.  As the number is evident, only the exhibit number is
referenced hereafter with the relevant page number on the electronic docket, if
necessary.

Manocha, the Dentist at Jefferson C.I. responded on or about August 25th, and advised Plaintiff he would be called out soon. *Id.*

Plaintiff was first examined by Defendant Manocha on September 10, 2008. Doc. 41, Exhibits 4, 5, 6. Defendant Manocha noted that Plaintiff was "completely edentulous" (all 32 teeth were missing), and his gingival condition was "inflamed." Doc. 41, Ex. 4. However, a handwritten note found Plaintiff's gingival condition without problems. Doc. 41, Ex. 5. Plaintiff's "masticating efficiency" was found to be "poor." Doc. 41, Exs. 4-5. Defendant Manocha noted in the Dental Treatment Record that Plaintiff had been living without teeth or dentures for approximately three to four years. Doc. 41, Ex. 5.

Defendant Manocha set up a treatment plan for Plaintiff to give him a complete set of dentures (both upper and lower). Doc. 41, Exhibits 5-6. During the initial appointment on September 10th , Defendant Manocha took preliminary impressions of Plaintiff's upper and lower mouth arches using alginate. Doc. 41, Ex. 5. Defendant Manocha then issued a Laboratory Procedure Authorization to the PRIDE Dental Lab in Raiford, Florida for the dentures. Doc. 41, Ex. 7. Defendant Manocha requested that the lab fabricate wax rims for a bite registration for the dentures. Doc. 41, Ex. 7. Defendant Manocha wrote Plaintiff's inmate number on the Authorization form as B04970, which is Plaintiff's correct inmate identification number. Doc. 41, Exhibits 1, 7.

On October 9, 2008, Plaintiff was seen in the Dental Clinic for "bite registration." Doc. 41, Ex. 5. The records show that Plaintiff "took bite in centric relation for U/L arches." Doc. 41, Ex. 5. Plaintiff selected A-2 as the shade, and an "ethnic mild" mold. *Id.* Defendant Manocha completed another Laboratory Procedure Authorization for the

PRIDE Dental Lab, giving instructions to the Lab to set the tray in centric relation for the try-in, and reduce the vertical dimension occlusion by 1 millimeter more than the bite record given. Doc. 41, Exhibits 5, 8. Once again, Plaintiff's inmate number was written "B04970." Doc. 41, Ex. 8.

Plaintiff returned to the Clinic for a "try-in" of the dentures on October 31, 2008. Doc. 41, Ex. 5. Plaintiff tried on the prospective model of the dentures and reported being satisfied with fit, esthetics, and occlusion. *Id.* Defendant Manocha completed another Laboratory Procedure Authorization requesting that the PRIDE Dental Lab "process" the dentures for delivery. Doc. 41, Ex. 9. Again, Plaintiff's inmate number was written as "B04970." *Id.*

Plaintiff received his new dentures on December 1, 2008. Doc. 41, Ex. 5. Defendant Manocha noted that Plaintiff was satisfied with fit, esthetics, and occlusion of the dentures. *Id.* Defendant Manocha advised Plaintiff to wear the dentures for 24 hours, and come back to the Clinic for "any adjustments if needed." *Id.* Plaintiff signed a receipt for the dentures, writing his inmate number as B04970, which also acknowledged that he understood that he was "responsible for the maintenance and safekeeping of the" dentures. Doc. 41, Ex. 10. The form also states "that only one provisional(s) will be provided in a lifetime unless a change in the dental condition renders the existing provisional(s) nonfunctional." *Id.* "Replacement costs of any of the provisions can and may be charged against inmate bank accounts." *Id.* Also, dentures have to be "turned in before replacements" are issued. *Id.*

Three days later, on December 4th, Plaintiff sent an Inmate Request to the Dental Clinic complaining that he felt the dentures were too big; he said that he was not

able to open his mouth to eat food, and during the day he felt a "heavy" pressure in his

mouth which caused him pain.  Doc. 41, Ex. 11.  Plaintiff also wrote "No is my D.C.

Number (#)," which is assumed to mean that the dentures did not have the correct

inmate identification number on them.  *Id.*  A dental technician advised Plaintiff to come

to sick call on December 9, 2008.  *Id.*  The response as dated December 4, 2008, the

same date that Plaintiff submitted the Request.  *Id.*

On December 9th, Plaintiff submitted an Informal Grievance to the Dental Clinic

stating that he got the response to his Inmate Request too late to go to sick call that

day.  Doc. 41, Ex. 12.  He stated again that he could not use his dentures, that the

number was not his "D.C. #," and he stated, "I don't now pay $4.00 sick call."  *Id.*

On December 18, 2008, Defendant Manocha examined Plaintiff.  Doc. 41, Ex.

13.  He wrote in Plaintiff's chart that Plaintiff presented with "slight soreness" in the

"upper anterior area," and Plaintiff's dentures were adjusted using an acrylic bur.  *Id.*  A

notation in Plaintiff's chart states that Plaintiff as "satisfied with fit."  *Id.*  As for the

discrepancy with the inmate number embedded on Plaintiff's dentures, the Dental

Treatment Record notes that Captain Barber was called and Defendant Manocha told

him that an incorrect inmate number was inscribed on Plaintiff's dentures.  Doc. 41, Ex.

13.  The number was B09470 instead of B04970.[3]  Defendant Manocha wrote a pass

for Plaintiff explaining that the dentures belonged to Plaintiff "forever" even though the

number was listed as "B09470 instead of his DC # B04970."  Doc. 41, Ex. 14.

---

[3] It is judicially noted that the Florida Department of Corrections website,
http://www.dc.state.fl.us/ActiveInmates/search.asp, reports that there is no prisoner in
the custody of the Department with number B09470.

On December 22, 2008, Defendant Manocha responded to Plaintiff's informal grievance, dated by Plaintiff on December 9, 2008. Doc. 41, Ex. 12. The grievance was denied, and Defendant Manocha's response was to note that Plaintiff had "already been seen" in the dental clinic and his issue resolved on December 18th. *Id.*

The Dental Treatment Record reveals no additional communication from Plaintiff about the dentures until he submitted another Inmate Request dated February 3, 2009, which was answered on February 5, 2009. Doc. 41, Ex. 13. In that Request, Plaintiff solicited intervention because he said he was continuing to have problems with his dentures. Doc. 41, Ex. 15. Plaintiff felt they were too big, and they continued to "cause rasping in [his] mouth, and" he was not able to eat food. *Id.* The response, dated February 5, 2009, advised Plaintiff he had "access to sick call for adjustments." *Id.*

Plaintiff's Dental Treatment Record chart reveals Plaintiff did not return for adjustments until March 23, 2009. Doc. 41, Ex. 13. On that day, March 23rd, Defendant Manocha used an acrylic bur to reduce the vestibular area on both the upper and lower dentures. *Id.* Once again, Defendant Manocha made a notation in the chart that Plaintiff was satisfied with the fit of the dentures. *Id.*

On March 30, 2009, Plaintiff sent an informal grievance to the medical department (rather than dental) in which he complained that although Dr. Manocha and staff had worked to give him dentures, he complained that after he received them in November, 2008, he has continued to have problems with them. Doc. 41, Ex. 16, p. 10. Plaintiff said he had been three times to Dr. Manocha to have them adjusted, but the problem continued. *Id.* Plaintiff said that they were too big for his mouth, that he was unable to eat food, and that after the last adjustment, they were worse because they

were not "cleaned good" and they "scrape" his mouth. *Id.* Plaintiff also complained

again that the inmate identification number on the dentures was not his inmate number.

*Id.* The informal grievance was referred to Defendant Manocha for a response. In

response, Dr. Manocha recommended that Plaintiff "report to dental department for

more adjustments to make it feel better." Doc. 41, Ex. 16, p. 10.

Plaintiff submitted a formal grievance on April 16, 2009, complaining that when

he went for the adjustments as suggested on April 15th, Defendant Manocha was not

available and he was told to come back later in the afternoon. Doc. 41, Ex. 16, p. 8.

Plaintiff complained that he had been having problems with his dentures since

November, 2008, and sought assistance. *Id.* Defendant Manocha responded to

Plaintiff's grievance, denying it and stating:

> A review of your dental record reflects that you were seen by me for upper
> and lower dentures on 9/10/08. You received the dentures on 12/1/08; you
> were satisfied at the time of delivery. You were told to come back for
> adjustments if needed. The DC# on the dentures was inscribed wrong by
> one digit and the problem was resolved by letting Captain Barber know.
> On 4/15/09, you showed up at 10:45 a.m. for sick call, you were told to
> come back in the afternoon as we had a lot of scheduled patients at that
> time. We had an emergency meeting at 1:30 p.m. that afternoon, which is
> why you were told to come back the next day. You never showed up after
> that for any adjustments.

Doc. 41, Ex. 16, p. 9. The formal grievance was also signed by Defendants Dr. Carrero

and Assistant Warden Lumpkin. *Id.*

Plaintiff filed an appeal of the denial of the April 16, 2009, formal grievance on

May 8, 2009, and it was stamped received on May 13th. Doc. 41, Ex. 16, p. 6. Plaintiff

complained that although the formal grievance was denied because Plaintiff was

satisfied with the dentures, it was not resolved. *Id.* He asserted that even after he

returned to dental for adjustments, the repaired area scraped his mouth. *Id.* Plaintiff also contended that the problem with the wrong number being on his dentures was not resolved because, without his proper inmate number being on them, the dentures could be turned in as "contraband in [his] locker." *Id.* Plaintiff repeated that he felt his dentures were too big for his mouth and he was not able to use the dentures to eat food and feared he would have infections in his mouth. *Id.*

The response to his appeal advised that Plaintiff's complaints had been evaluated, and the Director of Dental Services had also reviewed Plaintiff's appeal. Doc. 41, Ex. 16, p. 7. The appeal was denied, finding that the response by Dr. Carrero to Plaintiff's formal grievance had appropriately addressed the issues presented. *Id.* Plaintiff was encouraged to cooperate with health care staff and to go to sick call for further concerns. *Id.* This lawsuit was then initiated on August 15, 2008. Doc. 1.

Defendants have also presented the policy of the Department as to dentures. Doc. 41, ex. 18. In relevant part, an inmate may receive one complete denture set after six months of continuous incarceration in the Department, with at least six months of incarceration remaining, and only one complete set "will be provided in a lifetime with one reline provided at no cost." *Id.*, at p. 9. Inmates are responsible to care for the dentures, but "denture repairs will be assessed a co-payment fee unless the prosthesis is defective." *Id.* All repairs to dentures are made in the PRIDE Dental Laboratory. *Id.*

Defendants also presented an affidavit by Rebecca Padgham, an Analyst in the Department's Bureau of Inmate Grievance Appeals. Doc. 41, Ex. 16. She states that she found only one administrative appeal to the Secretary from grievance denials filed by Plaintiff, and that involved his claims (as initiated in the March 30, 2009, informal

grievance) about the inmate identification number error, that the dentures were too big, that the last adjustment had made his dentures worse, and that he could not use the dentures to eat food. *Id.* This affidavit asserts that no grievance appeal was filed concerning Plaintiff's claims that Defendant Manocha was unnecessarily rough and caused Plaintiff pain in September, 2008, when making the mold impressions, or that Dr. Manocha failed to use sanitary practices when making molds, adjustments, or providing treatment, or that Plaintiff attempted "to access dental sick call but was denied." Doc. 41, Ex. 16, p. 3.

**Analysis**

### Exhaustion of administrative remedies

Defendants argue that Plaintiff failed to exhaust administrative remedies as to several of his claims. Doc. 41, pp. 18-20. They assert that the claim against Defendant Manocha for being too rough during the September 10, 2008, visit is unexhausted. *Id.*, at 19. Furthermore, Defendants argue that Plaintiff's claim that Defendant Manocha used unsanitary practices is unexhausted. *Id.* Thirdly, Defendants contend that Plaintiff did not exhaust his claim concerning the December 18, 2008, dental visit with Defendant Manocha. *Id.* Finally, Defendants contend that Plaintiff did not exhaust claims of being denied dental sick call, with the exception of the April 15, 2009, visit. *Id.*, at 19-20.

Plaintiff responded to the summary judgment motion by asserting that all factual issues involved in this complaint arise "from a single, ongoing episode stemming from the Defendants failure to provide Plaintiff with adequate dental health care." Doc. 67, p.

1. Plaintiff asserts that he satisfied the exhaustion requirement and all acts by the Defendants were intertwined. *Id.*, at 2.

When the Prison Litigation Reform Act was enacted, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a), *quoted in* doc. 68, p. 2. The exhaustion requirement of § 1997e(a) is mandatory in a § 1983 case. Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007).[4]

A prisoner must also comply with the process set forth and established by the grievance procedures. *See* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). If one claim is unexhausted, the Court may separate that claim out and proceed on only those claims that have been exhausted. Brown v. Sikes, 212 F.3d 1205, 1206 (11th Cir. 2000) (finding that an inmate must "provide with his grievance all relevant information reasonably available to him" but he cannot be required to name individuals responsible for challenged conduct when he could not yet identify those persons); Jones, 549 U.S. at 223, 127 S.Ct. at 925 (rejecting a "total exhaustion rule" and requiring dismissal only of those unexhausted "claims," not an entire "action.").

---

[4] The Court further rejected the view of the Sixth Circuit when it concluded that "nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement." Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (concluding "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.").

Plaintiff pursued only one appeal from the denial of a grievance at the institutional level. Thus, to determine what claims were exhausted, that appeal and its predecessor grievances have been reviewed. Only those claims and events which are included in that appeal, or are intermingled with the events and issues described, or would have been discovered in the process of reviewing the appeal, should be found to have been exhausted.

Plaintiff stated in the appeal that after having adjustments made to his dentures, he continued to have problems and the repair was scraping his mouth. Ex. 16, referring to the informal and formal grievances. Plaintiff stated that he felt the dentures were too big, and he could not eat with the dentures. *Id.* He also complained about the wrong inmate number on his dentures. Those are the claims specifically mentioned, and the opportunities for follow-up visits, access to sick call, and the care provided would be included in review of that appeal.

Plaintiff's claims that (1) he was in pain during the initial examination in September, 2008, and that (6) some policy or procedure caused improper delay, Doc. 12, P. 8, were not clearly expressed in the grievances, and Plaintiff's one appeal did not provide an opportunity for the Department to resolve the dispute "before being haled into court." Summary judgment should be granted on claims (1) (that on September 10, 2008, Dr. Manocha caused unnecessary pain) and (6) (that Defendants McNeil and Lumpkin have policies and procedures causing delays and denials for providing functional dentures) as Plaintiff failed to exhaust administrative remedies as to those claims.

The remaining claims then are: (2) Dr. Manocha's alleged failure to provide adequate follow-up exams and treatment for the dentures: (3) Dr. Manocha's alleged "denials and delays in providing appropriate dentures;" (4) the alleged failure of McNeil and Lumpkin "correct inadequate procedures that restrict needed dental-medical treatment;" (5) the alleged failure of Carrero, Lumpkin, and Shields to make inquiry into Plaintiff's claims about Defendant Manocha's care; and (7) the alleged failure of Carrero, Lumpkin, and McNeil to act after knowing of "the unconstitutional procedures and denials at Jefferson C.I."

**Deliberate Indifference**

Deliberate indifference to the serious medical needs of sentenced prisoners violates the Eighth Amendment's prohibition of cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). A "'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Regional Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), *quoting* Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D. N.H. 1977). Alternatively, "a serious medical need is determined by whether a delay in treating the need worsens the condition" or "if left unattended, poses a substantial risk of serious harm." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1307 (11th Cir. 2009), *citing* Hill, 40 F.3d at 1188-89, and Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

The concept of deliberate indifference entails something more than negligence, but is satisfied by something less than actions undertaken with an intent to cause harm. Farmer v. Brennan, 114 S. Ct. 1970, 1978 (1994). Subjective recklessness, as defined in criminal law, is the standard which must be shown for an official's actions to rise to the level of deliberate indifference. *Id.* Deliberate indifference has been described as a culpable state of mind of the defendant to unnecessarily and wantonly inflict pain or harm to a prisoner by depriving him of a basic human need. Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).

Combining the standards from Farmer and Estelle, the Eleventh Circuit has clarified that, ultimately, there are four requirements to bringing an Eighth Amendment claim for the denial of medical care: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), *cert. denied* 531 U.S. 1077 (2001); Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). Put another way, once a prisoner shows that he has a serious medical need, "the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004), *citing* McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir.1999).

Medical malpractice does not constitute deliberate indifference. Estelle, 429 U.S. at 106, 97 S. Ct. at 292. "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." Harris v. Thigpen, 941 F.2d 1495,

1505 (11th Cir. 1991), citing <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1033 (11th Cir. 1989).

*See also* <u>Johnson v. Stephan</u>, 6 F.3d 691, 692 (10th Cir. 1993).  For example, in

<u>Estelle</u>, the prisoner received treatment for his back injury (bed rest, muscle relaxants

and pain relievers), but complained that more should have been done in the way of

diagnosis, such as an X-ray or other tests.  The Court rejected this as a basis for

liability:

> But the question whether an X-ray--or additional diagnostic techniques or
> forms of treatment--is indicated is a classic example of a matter for
> medical judgment.  A medical decision not to order an X-ray, or like
> measures, does not represent cruel and unusual punishment.

429 U.S. at 107, 97 S. Ct. at 293.  "An inmate who complains that delay in medical

treatment rose to a constitutional violation must place verifying medical evidence in the

record to establish the detrimental effect of delay in medical treatment to succeed." <u>Hill</u>,

40 F.3d at 1187.

   <u>McElligott v. Foley</u>, 182 F.3d 1248 (11th Cir. 1999) held that "a jury could find

that the medication provided to [the prisoner] was so cursory as to amount to no care at

all." 182 F.3rd at 1257.  Thus, if a defendant is aware that the pain medication provided

is not treating the prisoner's pain, and does nothing more to treat that pain or respond to

a deteriorating condition, a jury could find that defendant violated the Eighth

Amendment.  An "official acts with deliberate indifference when he or she knows that an

inmate is in serious need of medical care, but he fails or refuses to obtain medical

treatment for the inmate." <u>McElligott</u>, 182 F.3d at 1255, *citing* <u>Lancaster v. Monroe

County, Ala.</u>, 116 F.3d 1419, 1425 (11th Cir. 1997); <u>Mandel v. Doe</u>, 888 F.2d 783, 788

(11th Cir.1989).

However, routine discomfort does not qualify as a serious medical need. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992). Further, when an inmate has received some medical attention or care and the dispute involves the adequacy of the care, federal courts are reluctant to second guess medical judgments and find an Eighth Amendment violation. Harris v. Thigpen, 941 F.2d 1495, 1507 (11th Cir. 1991).

Plaintiff fails to point to any evidence that Defendant Manocha failed or refused to provide dental care to Plaintiff when he sought help for the issues with his dentures. The evidence shows that at each time when Plaintiff complained of a problem, he was advised to return to sick call so the dentist could make adjustments. It is undisputed that each time Plaintiff arrived in the dental clinic, Defendant Manocha provided care and sought to alleviate Plaintiff's discomfort. It is undisputed that at each visit with Defendant Manocha, Plaintiff responded that he was satisfied with the way the dentures fit. There is no evidence that Dr. Manocha ignored or did not take seriously Plaintiff's complaints of discomfort. Plaintiff's continuing problems appear to be routine minor discomfort in adjusting to dentures, which Plaintiff had not worn for some three or four years prior to entering prison. Had Plaintiff been suffering more than just discomfort, the evidence would likely reveal more difficulties and more visits to seek help.

This is not a case such as Farrow v. West, 320 F.3d 1235 (11th Cir. 2003), where the inmate waited for some fifteen months to receive dentures, and the dentist was aware the inmate was in pain, had continual bleeding and swollen gums, and experienced weight loss. Plaintiff has not shown that Defendant Manocha was deliberately indifferent to Plaintiff's condition and, therefore, Plaintiff's Eighth Amendment rights were not violated by Defendant Manocha.

As a consequence, claims against other Defendants must fall.  Even if

*respondeat superior* did not bar the claims, there could be no supervisory liability where

there is no liability for the principle actor.  But additionally, a prison official cannot be

named as a Defendant in a civil rights case merely because he or she has supervisory

authority over others.  The doctrine of *respondeat superior* does not provide a basis for

recovery under § l983.  Harvey v. Harvey, 949 F.2d 1127, 1129 (11th Cir. 1992), *citing*

Monell v. Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611

(1978); *see also* Collins v. City of Harker Heights, 503 U.S. 115, 112 S. Ct. 1061, 117 L.

Ed. 2d 261 (1992); Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S. Ct. 1292, 89 L.

Ed. 2d 452 (1986).  None of the Defendants other than Dr. Manocha were involved in

Plaintiff's care and have no liability here.  Moreover, because Plaintiff received sufficient

care at the outset, none of the other named Defendants can be faulted for not doing

more in investigating Plaintiff's care.  All Defendants are entitled to summary judgment.

Accordingly, it is **RECOMMENDED** Defendants' motion for summary judgment,

doc. 41, be **GRANTED** for failure to exhaust administrative remedies as to claims (1)

and (6), doc. 12, p. 8, and, as to all other claims, because Plaintiff's Eighth Amendment

rights were not violated in the dental care that Plaintiff received.

**IN CHAMBERS** at Tallahassee, Florida, on December 15, 2010.


 S/      William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.